Alysia ARO, an infant, by her mother
and natural guardian, Paula Aro, and
Paula Aro, individually, Plaintiffs,

v.

Samuel LICHTIG, Defendant.

No. 81 Civ. 81.

United States District Court,
E. D. New York.

April 6, 1982.

Bloom & Mintz, P. C., New York City, for plaintiffs.

Garbarini, Scher & DeCicco, P. C., New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a diversity action brought by New York residents, alleging medical malpractice, in which the infant plaintiff seeks damages for personal injuries and her mother seeks damages for medical expenses and loss of services.

The cause of action accrued on July 14, 1978, when the infant was last seen by the defendant doctor. The complaint was filed January 8, 1981. The defendant, a resident of New Jersey, was served with the summons and complaint by a United States Marshal on February 2, 1981. Pending in New York State Supreme Court, Kings County, is a malpractice action brought by the same plaintiffs alleging the same causes of action against the defendant here, as well as against other non-diverse doctors and a hospital.

Defendant moves to dismiss the complaint on the grounds that (1) the statute of limitations had run prior to the time de-

0

**600**

fendant was served, and (2) there is a pending state action.

*Discussion* :

### A. Statute of Limitations.

■ Under *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), state law governs the question as to when an action is deemed commenced in a diversity case. In New York, an action is commenced upon service of the summons upon the defendant. CPLR 203(b) (McKinney's Supp.1980). The applicable statute of limitations in this action is New York's medical malpractice statute of two years and six months. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); CPLR 214–a (McKinney's Supp.1980).

Defendant argues that because the summons was served upon the defendant on February 2, 1981—two years, six months and nineteen days after the cause of action arose—the action must be dismissed. He ignores, however, CPLR 203(b)(5) which provides that the statute of limitations stops running when the "summons is delivered to the sheriff of that county outside the city of New York or is filed with the Clerk of that county within the city of New York in which defendant resides, is employed or is doing business ... provided that: (i) the summons is served upon the defendant within sixty days after the period of limitation would have expired but for this provision . . . ." If this statute applies, the action is timely because the summons was served within sixty days after January 14, 1981 (the date the period of limitation would have expired without the benefit of CPLR 203(b)(5)). Accordingly, the Court must determine whether the filing of the summons and complaint with the clerk of this Court and delivery to the United States Marshal on January 8, 1981, is equivalent to filing the summons with the clerk of Kings County or delivery to a sheriff.

This precise issue was raised in *Somas v. Great American Insur. Co.*, 501 F.Supp. 97 (S.D.N.Y.1980). There, Judge Weinfeld held that "filing with this Court is deemed equivalent to filing with the county clerk for purposes of implementing the sixty-day extension." *Id.* at 96. Every other court that has considered the issue has arrived at the same conclusion. *Zarcone v. Condie*, 62 F.R.D. 563, 568–69 (S.D.N.Y.1974); *Bratel v. Kutsher's Country Club*, 61 F.R.D. 501, 502 (S.D.N.Y.1973); *Myers v. Slotkin*, 13 F.R.D. 191, 194–95 (E.D.N.Y.1952); *Nola Electric Co. v. Reilly*, 93 F.Supp. 164, 170–71 (S.D.N.Y.1949). *See Groninger v. Davison*, 364 F.2d 638, 642 (8th Cir. 1966); *Wheeler v. Standard Tool & Mfg. Co.*, 311 F.Supp. 1177, 1179 n.2 (S.D.N.Y.1970). *See also* 28 U.S.C. § 570 ("A United States Marshal and his deputies, in executing the law of the United States, within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof.").

■ This ruling is consistent with the teachings of *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), that plaintiff's rights should be no greater in a federal court than in a state court. In this case, had plaintiffs filed their state court summons with the Kings County clerk on January 8, 1981, they would have been entitled to the sixty-day extension. Thus, by granting them the sixty-day extension because they filed their summons and complaint with the clerk of this Court on that date, they are receiving no more than they would have been entitled in a state court action. *Somas v. Great American Insur. Co.*, 501 F.Supp. at 97. Accordingly, the action is timely.[1]

### B. Pending State Action.

Defendant also argues that because the plaintiffs have sued him in New York State Supreme Court on identical causes of action, this action should be stayed.

1. In any event, the infant plaintiff would be entitled to an extension of the statute of limita-

tions under CPLR 208.

Although "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction . . . ." (*McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910)), the issue whether a federal court should stay its hand to avoid duplicative litigation has attracted much attention of late. *See generally* Note, *Abstention and Mandamus After Will v. Calvert Fire Ins. Co.*, 64 Corn.L.Rev. 566 (1979); Comment, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River*, 44 U.Chi.L.Rev. 641 (1977); J. Moore, *Federal Practice* ¶ 0.203[4] at 2135–36 (1981). Indeed, the Second Circuit has long held, and the Supreme Court has recently affirmed, the discretionary power of a district court to defer to state court proceedings. *See, e.g., Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 663, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir. 1976); *Simmons v. Wetherell*, 472 F.2d 509, 512 (2d Cir. 1973); *Klein v. Walston & Co.*, 432 F.2d 936, 937 (2d Cir. 1970); *Mottolese v. Kaufman*, 176 F.2d 301, 302–03 (2d Cir. 1949) (L. Hand, J.). *See also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *American Motorists Insur. Co. v. Philip Carey Corp.*, 482 F.Supp. 711, 715 (S.D.N.Y.1980); *United States v. Cargill, Inc.*, 508 F.Supp. 734 (D.Del.1981).

Due to the increased "overlap between state claims and federal claims" the Supreme Court "soon recognized that situations would often arise when it would be appropriate to defer to the state Courts." *Will v. Calvert Fire Ins. Co.*, 437 U.S. at 663, 98 S.Ct. at 2557. The Court quoted from *Brillhart v. Excess Ins. Co.*, 316 U.S. at 494, 62 S.Ct. at 1175, in which the Court declined to exercise its jurisdiction in a declaratory judgment suit because it would be "uneconomical as well as vexatious for a federal court to proceed" where, as here, there is a pending state action presenting the same issues and none of these issues involve federal law. "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should

be avoided." *Id.* Indeed, "[w]hen everyone with an interest could have his claim resolved in one court, it would be senseless to allow some of the parties to initiate concurrent litigation over the same suit." *Consumers Union of the United States, Inc. v. Consumer Product Safety Comm'n*, 590 F.2d 1209, 1219 & n.46 (D.C.Cir.1978).

Increasingly, the trend has been toward staying, and at times even dismissing, a subsequently filed federal proceeding involving the same, or even similar parties, and the same issues. *See, e.g., Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976).

Several factors should be considered: (1) the avoidance of piecemeal litigation; (2) the possibility of inconsistent judgments; (3) the order in which the actions were commenced; (4) the inconvenience of the federal forum; (5) whether the claims of all parties may be adjudicated in the state proceeding; and (6) identity of the parties and issues in both actions. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. at 817–18, 96 S.Ct. at 1246; *Brillhart v. Excess Ins. Co.*, 316 U.S. at 495, 62 S.Ct. at 1175; *State Farm Mutual Auto. Ins. Co. v. Scholes*, 601 F.2d 1151, 1155 (10th Cir. 1979); *American Motorists Ins. Co. v. Philip Carey Corp.*, 482 F.Supp. at 714–15; *Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.*, 390 F.Supp. 824, 827 (S.D.N.Y.1975).

Evaluation of these factors persuades this Court that it should enter a stay. Indeed, dismissal without prejudice would probably be warranted in this case. First, this is a rather run-of-the-mill diversity action filed subsequent to a state action. Second, both actions were brought by the same plaintiffs, involve the same issues, and turn exclusively on New York law. In fact, the only difference between the state and federal actions is the addition of several nondiverse defendants in the state action. Third, continuation of this litigation will unnecessarily duplicate the state action. Fourth, and perhaps most significantly, the

plaintiffs in both cases are New York residents.

The court is at a loss to understand why an in-state plaintiff should have the right to invoke diversity jurisdiction against an out-of-state defendant. *See* Commentary, ALI Study of the Division of Jurisdiction Between State and Federal Courts § 1302(a) at 123–25 (1969). "The in-stater can hardly be heard to ask the federal government to spare him from litigation in the courts of his own state. Any prejudice which he may fear is not of the kind against which the diversity jurisdiction was intended to protect." *Id. See Tobin v. Slutsky*, 506 F.2d 1097, 1098 (2d Cir. 1974); H. Friendly, *Federal Jurisdiction: A General View* 139–52 (1973). As Judge Cannella wrote in a similar situation: "The stay of this action is but a small step toward a more adequate allocation of judicial resources and manpower.... [T]he assignment of this controversy to the New York courts for resolution will justly advance the interests of the parties, as well as those of proper resource allocation in the respective courts—a result both available and proper under existing law." *Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.*, 390 F.Supp. 824, 828 (S.D.N.Y.1975).

Accordingly, defendant's motion to stay this action is granted.

SO ORDERED.